UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF OHIO

In Re:                                         )
                                               )      **JUDGE RICHARD L. SPEER**
Martin A. Wcislak                              )
and                                            )      Case No. 08-35944
Laura L. Wcislak                               )
                                               )
        Debtor(s)                              )
                                               )

## DECISION AND ORDER

This cause comes before the Court after an Evidentiary Hearing on the Debtors' Objection to the Claim of JP Morgan Chase Bank. (Doc. No. 79). At issue at the Hearing was the value of a motor vehicle, a 2005 Ford Explorer, titled in the name of the Debtor, Martin A. Wcislak. At the conclusion of the Hearing, the Court deferred ruling on the matter so as to afford the opportunity to further consider the evidence presented in this matter. The Court has now had this opportunity, and finds, for the reasons set forth herein, that the Debtors' Objection to the Claim of JP Morgan Chase Bank should be Sustained in Part.

## FACTS

On October 31, 2008, the Debtors, Martin and Laura Wcislak, filed a petition in this Court for relief under Chapter 13 of the United States Bankruptcy Code. (Doc. No. 1). In the schedules submitted with their petition, Mr. Wcislak disclosed an interest he held in a 2005 Ford Explorer. The Debtors set forth the sum of $8,704.88 as the value of this asset. The Debtors further disclosed that the vehicle was encumbered by a secured claim in the amount $18,849.00.

At the time of the Hearing held in this matter, the milage on Mr. Wcislak's 2005 Ford Explorer stood at approximately 68,000. Although it had been previously damaged, the overall

**In re: Martin and Laura Wcislak**
**Case No. 08-35944**

picture presented of the vehicle was that it was in substantially good condition. (Ex. D). The Debtor, however, testified that some repairs to the vehicle were needed – particularly, to the shocks and brakes. Also, the Debtor related that the vehicle's tires needed to be replaced.

For the obligation secured against the vehicle, JP Morgan Chase Bank filed a proof of claim in this case, asserting a secured claim in the amount of $18,973.03. (Cl. No. 8-1). As support for its claim, JP Morgan Chase Bank attached to its proof of claim its financing and security agreement with Mr. Wcislak. This agreement, entered on September 11, 2005, required Mr. Wcislak to pay JP Morgan Chase Bank the sum of $532.63 per month for a period of six years at an interest rate of 6.57% per annum. *Id.*

Citing to 11 U.S.C. § 506, the Debtors proposed in their Chapter 13 plan of reorganization, as amended, to treat the claim of JP Morgan Chase Bank as a secured claim in the amount of $8,704.88 and then to treat the remaining portion of its claim as unsecured. (Doc. No. 68). On the secured portion of its claim, the Debtors proposed to pay JP Morgan Chase Bank at an interest rate of 6.40% and to make monthly payments on a pro-rata basis. The Debtors' plan further provided that unsecured creditors would receive, on account of their claims, an amount of not "less than 0.00 percent." The Debtors have yet to have their plan confirmed by the Court.

Consistent with their proposed Chapter 13 plan, the Debtors filed an objection to the proof of claim filed by JP Morgan Chase Bank. (Doc. No. 23). As the basis for their objection, the Debtors set forth that the claim of JP Morgan Chase Bank did not adequately account for their proposed "cramdown" of its secured claim and that its claim did not account for the $8,704.88 in value the Debtors assigned to its secured claim. *Id.* In response, JP Morgan Chase Bank asserted that its collateral should be valued at $12,650.00. (Doc. No. 39). For this same reason, JP Morgan Chase Bank also filed an objection to the confirmation of the Debtors' proposed plan of reorganization. (Doc. No. 14).

Page 2

In re: Martin and Laura Wcislak
Case No. 08-35944

## DISCUSSION

Before this Court is the Debtors' Objection to the Claim of JP Morgan Chase Bank. At the evidentiary hearing held on this matter, a single issue for determination was placed before the Court: the value to assign to Mr. Wcislak's 2005 Ford Explorer. A determination of this matter will also resolve the Objection filed by JP Morgan Chase Bank to the confirmation of the Debtors' proposed Chapter 13 plan. Both these matters, an objection to claim and an objection to confirmation, are deemed by bankruptcy law to be core proceedings. 28 U.S.C. § 157(b)(2)(B)/(L). Accordingly, on these matters, the Court has jurisdiction to enter final orders and judgments. 28 U.S.C. § 157(b)(1).

A debtor seeking relief under the provisions of Chapter 13 of the United States Bankruptcy Code is required to propose and file a plan of reorganization. 11 U.S.C. § 1321. As a part of their plan, a debtor may propose to modify, with the exception of a debt secured against the debtor's principal residence, the rights of creditors holding secured claims. 11 U.S.C. § 1322(b)(2); *Nobelman v. American Savings Bank*, 508 U.S. 324, 113 S.Ct. 2106, 124 L.Ed.2d 228 (1993). As a part of this process, a secured claim subject to modification may be bifurcated, based upon the value of the collateral, into a secured and unsecured claim. 11 U.S.C. § 506(a). A creditor whose collateral is worth less than the secured debt is, thus, treated as having two claims, one secured and one unsecured.

Thereafter, the debtor may treat each claim separately, according to the Bankruptcy Code's priority scheme. For a Chapter 13 debtor wishing to retain secured property, this requires that a debtor's plan comply with § 1325(a)(5)(B). Among its other requirements, this provision sets forth that, as a condition to confirmation, a debtor's plan must provide the secured "creditor with payments, over the life of the plan, that will total the present value of the allowed secured claim, i.e., the present value of the collateral." *Rake v. Wade*, 508 U.S. 464, 468, 113 S.Ct. 2187, 2188, 124 L.Ed.2d 424 (1993). The unsecured portion of the claim, however, does not have to be fully paid so

Page 3

In re: Martin and Laura Wcislak
Case No. 08-35944

long as the debtor's plan devotes all of his or her "disposable income" to the repayment of the unsecured claims. 11 U.S.C. § 1325(b)(1).

This process, known as "cramdown," effectively allows a debtor to strip the lien of a secured creditor down to the value of the creditor's collateral. 11 U.S.C. § 506(d). Once accomplished, a creditor's allowed secured claim will be limited to the value of its collateral, while any remaining amounts owing to the creditor will be treated as an unsecured claim, subject to discharge to the extent that it is not satisfied. 11 U.S.C. § 506(a). This potentially confers a substantial benefit on a Chapter 13 debtor.

Chapter 13 debtors rarely pay the full value of their unsecured secured claims, with the Debtors in this matter epitomizing this fact, having proposed a 0% plan. In addition, a debtor will in many instances, this particular case again being no exception, owe a secured creditor an amount greater than the value of the collateral – with such a claim said to be undersecured. Thus, by cramming down a secured claim into its respective secured and unsecured components, a debtor can force a secured creditor to accept less than the full value for its claim. *In re Dale*, — F.3d —, 2009 WL 2857998 (5th Cir. 2009). It is from this legal framework by which the Debtors seek a valuation of Mr. Wcislak's 2005 Ford Explorer.

The valuation of a creditor's collateral is controlled by § 506(a). *In re Stauffer*, 141 B.R. 613 (Bankr. N.D.Ohio 1992). Under paragraph (1) of § 506(a), it is provided that "value shall be determined in light of the purpose of the valuation and of the proposed disposition or use of such property, and in conjunction with any hearing on such disposition or use or on a plan affecting such creditor's interest." In a situation such this, where the collateral is owned by an individual debtor in a Chapter 13 case, this method of valuation is further refined in paragraph (2) of § 506(a).

Page 4

In re: Martin and Laura Wcislak
Case No. 08-35944

Section § 506(a)(2) requires that, for individual debtors in cases brought under Chapter 7 or 13 of the Bankruptcy Code, the valuation of a creditor's collateral is to be based upon the replacement value of the collateral. In the first sentence of § 506(a)(2) it is provided that if "the debtor is an individual in a case under chapter 7 or 13, such value with respect to personal property securing an allowed claim shall be determined based on the replacement value of such property as of the date of the filing of the petition without deduction for costs of sale or marketing." Additionally, for individuals such as Mr. Wcislak, who hold secured property for personal use, § 506(a)(2) goes on to further refine this definition, providing that with "respect to property acquired for personal, family, or household purposes, replacement value shall mean the price a retail merchant would charge for property of that kind considering the age and condition of the property at the time value is determined."

Accordingly, pursuant to § 506(a)(2), the value of Mr. Wcislak's 2005 Ford Explorer must be ascertained with respect to its replacement value which in this matter constitutes its retail price as measured from the time of the evidentiary hearing. *In re Cook*, — B.R. —, 2009 WL 2913958 (Bankr. D.Kan. 2009). For this valuation method, it is the Debtors' position that the retail value of Mr. Wcislak's 2005 Ford Explorer should be set at $8,704.88. In contrast, it is the position of JP Morgan Chase Bank that the retail value of Mr. Wcislak's Ford Explorer is, for purposes of § 506(a), $12,650.00.

As support for their valuation, the Debtors, in addition to offering the corroborating testimony of Mr. Wcislak, presented to the Court numerous 'sales offers' gathered from the internet; these 'sales offers' set forth that the average asking price for a vehicle comparable to his 2005 Ford Explorer was in the range of eight to nine thousand dollars. (Ex. No. 1 & 2). In addition, the Debtors presented to the Court written estimates showing that to repair the vehicle's shocks and brakes and replace the tires would cost respectively, $542.28, $857.04 and $712.56. (Ex. No. 3). The Debtors

Page 5

In re: Martin and Laura Wcislak
Case No. 08-35944

also presented an estimate showing that it would cost $7,843.81 to repair prior damage, mostly to the body, caused to the vehicle. (Ex. No. 4).

A debtor bears the burden of proof on the issue of valuation under § 506(a). *In re Finnegan*, 358 B.R. 644, 649 (Bankr. M.D.Pa. 2006). Regarding the $8,704.88 in value the Debtors have attached to Mr. Wcislak's 2005 Ford Explorer, the Court, after weighing the evidence just outlined, is not satisfied that the Debtors have wholly met their burden. The reason: the only corroborating evidence Mr. Wcislak presented to substantiate the base value of his vehicle were the 'sales offers' he gathered from the internet. And while such evidence is not necessarily inadmissible,[1] its evidentiary weight is questionable, particularly, in light of the evidence offered in rebuttal by JP Morgan Chase Bank. In ascending order of evidentiary weight, this evidence was derived from the following sources:

First, in opposition to the Debtors' valuation of the 2005 Ford Explorer, JP Morgan Chase Bank offered into evidence its own internet 'sales offers' which wholly contradicted Mr. Wcislak's assessment as to the vehicle's retail value; these 'sales offers' revealed that a comparable vehicle would sell to a consumer for approximately twelve to thirteen thousand dollars. (Ex. A). JP Morgan Chase Bank also offered the latest blue book value for the type of vehicle owned by Mr. Wcislak, wherein the "Clean Retail" value of the vehicle was set forth at $11,775.00 (Ex. B). But most importantly, JP Morgan Chase Bank placed into evidence the oral testimony and written report of a professional appraiser. This report set forth that after "inspection and review of the unit and taking into consideration of the old damage not related, the fair market retail acv is $12,200.00." (Ex. D.).

When faced with competing evidence as to the value of property, an assessment as to the retail value of a vehicle under § 506(a)(2) ultimately depends on the facts presented in each case. *In*

---

[1]*See* FED.R.EVID. 803(17); 902(6).

Page 6

In re: Martin and Laura Wcislak
Case No. 08-35944

*re Morales*, 387 B.R. 36, 45 (Bankr. C.D.Cal. 2008). Regarding the evidence before the Court, the internet 'sales offers' produced by each of the Parties are of dubious value, with each of the Parties producing numerous 'sales offers' to support their respective positions. In this regard, given the proliferation of auto sales on the internet, it has become easy for parties to cherry-pick sales information from the internet, thus making such evidence easy to manipulate.

By contrast, blue book guidelines provide a neutral and independent source of a vehicle's value. As such, the blue book guideline offered into evidence by JP Morgan Chase Bank provides a better indication of the value of Mr. Wcislak's vehicle. However, blue book guidelines are unable to account for the myriad of facts that may be peculiar to a debtor's particular vehicle. As such, blue book guidelines, while constituting strong probative evidence of value, are not necessarily conclusive. *In re Roberts*, 210 B.R. 325 (Bankr. N.D. Iowa 1997).

Instead, when such evidence is available, as it is here, blue book guidelines should be used in conjunction with expert testimony. *Id.* For this purpose, the Court finds that, insofar as it concerns the base value of Mr. Wcislak's 2005 Ford Explorer, $12,000.00 represents the correct retail value of the vehicle for purposes of § 506(a)(2) – this figure constituting a blend of the vehicle's blue book value and the value of the vehicle as set forth in the report prepared by the professional appraiser.

Notwithstanding, it is also clear that both the blue book value and the report prepared by the professional appraiser did not adequately account for a number of considerations, particular to Mr. Wcislak's vehicle, that would negatively affect the vehicle's value. First, it came to the Court's attention that the report prepared by the professional appraiser was based on a comparable used vehicle with 40,000 miles, not 60,000 miles as is the case with Mr. Wcislak's vehicle. Based on this deficiency, the Court will deduct $1,000.00 from the $12,000.00 base value of the vehicle.

Page 7

**In re: Martin and Laura Wcislak**
**Case No. 08-35944**

Second, in assessing a vehicle's value for purposes of § 506(a)(2), costs of necessary repairs are to be deducted. *In re Hauser*, 405 B.R. 684, 685 (Bankr. S.D.Fla. 2009). Based on the evidence presented, the Court finds that two repairs are necessary for purposes of assessing the retail value of Mr. Wcislak's vehicle. Specifically, the Court will deduct from the retail value of Mr. Wcislak's 2005 Ford Explorer the costs necessary to repair the vehicle's shocks and brakes.

However, concerning Mr. Wcislak's position that an additional $8,556.37 is needed for repairs ($712.56 to replace the tires and $7,843.81 to repair damage to the vehicle's body), the Court, having viewed the photographs of the vehicle submitted with the report of the professional appraiser, is not of the opinion that such repairs are absolutely necessary to market the vehicle. In this regard, the exterior photographs of the vehicle, including the tires, show a vehicle in relatively good condition. The Court, thus, cannot accept that it would be necessary to invest in the vehicle's repair an amount which is approximately equal to the total value of the vehicle ($8,704.88) as claimed by Mr. Wcislak.

Accordingly, in accordance with these findings, it is the conclusion of the Court that the base value of the 2005 Ford Explorer owned by Mr. Wcislak is, for purposes of § 506(a)(2), $12,000.00. From this figure, the Court will then subtract the costs to repair the vehicle's shocks and brakes which, as taken from the repair estimates provided by Mr. Wcislak, are respectively $542.28 and $857.04. The Court will also subtract from the vehicle's value an additional $1,000.00 to account for the milage discrepancy upon which the professional appraisal of the vehicle was based.

Therefore, for purposes of both the Debtors' Objection to the Claim of JP Morgan Chase and the Objection filed by JP Morgan Chase Bank to the confirmation of the Debtors' proposed Chapter 13 plan, the Court holds that, as applied to § 506(a)(2), the retail value of Mr. Wcislak's 2005 Ford Explorer is $9,600.68. Interest, for purposes of § 1325(a)(5)(B)(ii), shall be payable on the claim at the contract rate of 6.57% per annum. In reaching the conclusions found herein, the Court has

Page 8

In re: **Martin and Laura Wcislak**
**Case No. 08-35944**

considered all of the evidence, exhibits, and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that, for purposes of 11 U.S.C. § 506(a), the Creditor, JP Morgan Chase Bank, is hereby deemed to hold a secured claim in the amount $9,600.68 and an unsecured claim in the amount of $9,372.35. For purposes of 11 U.S.C. § 1325(a)(5)(B)(ii), the secured claim shall be entitled to be paid interest at the rate of 6.57% per annum.

***IT IS FURTHER ORDERED*** that, consistent with the above Order, the Debtors' Objection to the Claim of JP Morgan Chase Bank, (Doc. No. 23), and the Objection of JP Morgan Chase Bank to Confirmation of Plan, (Doc. No. 14), be, and are hereby each Sustained in Part.

Dated: October 1, 2009

_____
Richard L. Speer
United States
Bankruptcy Judge

Page 9

# CERTIFICATE OF SERVICE

Copies were mailed this 1st day of October 2009 to:

Cynthia A Jeffrey
2450 Edison Blvd
Twinsburg, OH 44087

John P. Gustafson
Office of the Chapter 13 Trustee
316 N. Michigan St. #501
Toledo, OH 43604

Laura L Wcislak
165 Birchcrest Drive
Perrysburg, OH 43551

Martin A Wcislak
165 Birchcrest Drive
Perrysburg, OH 43551

Owen Dunn, Jr
520 Madison Ave., Suite 330
Toledo, OH 43604

/s/Jennifer S Huff
Deputy Clerk, U.S. Bankruptcy Court